UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FRANCISCO QUIROZ LOPEZ,

Petitioner,

v.

PAMELA BONDI, et al.,

Respondents.

CASE NO. 2:26-cv-00767-BAT

**ORDER GRANTING HABEAS PETITION**

Petitioner Francisco Quiroz Lopez, a citizen of Mexico who had been released for years despite a final order of removal, was arrested and redetained in the Northwest ICE Processing Center ("NWIPC") without a pre-deprivation hearing upon appearing for a routine check-in with authorities. In a 28 U.S.C. § 2241 petition, he seeks habeas relief because the government failed to follow the applicable regulations and violated his due process rights when detaining him. The Court **GRANTS** Petitioner's habeas petition and **ORDERS** Respondents to release him from detention no later than **5 p.m. on April 7, 2026**. Respondents shall file within twenty-four (24) hours of his release from detention a declaration confirming his release and informing the Court of the date and time of his release.

**BACKGROUND**

Petitioner acknowledges in 1998, he was served with an expedited removal order and

ORDER GRANTING HABEAS PETITION - 1

later returned to the United States from Mexico. Dkt. 1, at 4 ¶ 16. In April 2019, Petitioner applied for a T visa for victims of human trafficking. *Id.* at 4 ¶ 17. Nonetheless, in May or June 2019, ICE reinstated Petitioner's removal order and he was placed on supervision. *Id.* at 4 ¶ 18; Dkt. 7-3, at 2. Petitioner's T visa application was denied in August 2020. Dkt. 1, at 4 ¶ 19. Over the years, Petitioner has made several attempts to reconsider, reopen, or appeal the T visa denial and his most recent appeal in March 2022 remains pending. *Id.* at 4 ¶ 20.

On January 8, 2026, Petitioner reported for an annual ICE check-in. According to Petitioner, ICE told him he had violated his Order of Supervision ("OSUP") because he had left the United States and returned in 2022, which Petitioner denied. *Id.* at 4–5 ¶¶ 21–22. Petitioner was nonetheless detained despite expressing a fear of return to Mexico. *Id.* at 5 ¶¶ 23–24.

Respondents contend Petitioner was never apprehended and released on an OSUP because in January 2026 ICE was simply acting to effectuate a June 11, 2019 reinstated order of removal.[1] Dkt. 5, at 7; Dkt. 7-2. Respondents cite nothing to support the absence of an OSUP and do not explain why ICE chose to wait 7 years to begin removal proceedings despite having Petitioner regularly check-in because they also admit that they did not have access to or review Petitioner's A-file prior to submitting their brief. Dkt. 5, at 6 n.2. Thus, Respondents argue they must not have violated any relevant regulations based on the speculation Petitioner received all the process he was due by receiving notice in 2019 that at some point of time, perhaps years later and after having satisfied all conditions of supervision, he would be detained and removed

---

[1] Respondents submitted documents that are internally inconsistent. Their submitted I-213 form from the January 2026 detention states that the I-871 Notice of Intent to Reinstate Prior Order was issued on May 29, 2019, not June 11, 2019. Dkt. 7-4, at 3. However, Respondents' submitted I-213 form from June 11, 2019 notes that on May 29, 2019, Petitioner simply "reported to ERO as instructed." Dkt. 7-3, at 3. Moreover, the same document appears to show that Petitioner may have been served the I-871 Notice of Intent to Reinstate Prior Order might have occurred as late as August 9, 2019. *Id.*

ORDER GRANTING HABEAS PETITION - 2

without further notice, an opportunity to respond, or an evaluation of contested facts. Dkt. 5, at 7–8.

In March 2026, Petitioner received a negative reasonable fear determination that was upheld by an immigration judge ("IJ"). Dkt. 6, at 3 ¶ 15–16. The Ninth Circuit has issued an automatic stay of removal while Petitioner's current Petition for Review of the IJ's decision is pending. Dkt. 6, at 3 ¶ 17; *Quiroz Lopez v. Bondi*, No. 26-1545 (9th Cir. Mar. 15, 2026).

**DISCUSSION**

Respondents' contention Petitioner was not released on an OSUP is not supported and is belied by their own scant documentation that Petitioner has been regularly reporting for years since the reinstated 2019 final order of removal, as well as Petitioner's own submitted documentation. The Court also rejects Respondents' speculative argument, made without access to Petitioner's A-file, that the government provided adequate notice of the revocation of his supervision and the opportunity to respond by informing him in 2019 that he had a final order of removal, requiring him to check in semi-annually and annually, and then arresting him in 2026 and noting that he feared returning to Mexico. The Court finds Respondents have violated Petitioner's procedural due process rights by failing to follow their own regulations revoking supervised release.

The Court has authority to grant a writ of habeas corpus to an individual who is in custody "in violation of the Constitution or law or treaties of the United States." See 28 U.S.C. § 2241(c)(3). Whether the manner in which an alien was detained comported with due process is analyzed pursuant to the three-part standard set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See G.S. v. Hermosillo*, No. C25-2704-TSZ, 2026 WL 179962, at *2 (W.D. Wash. Jan. 22, 2026). All three *Mathews* factors weigh in Petitioner's favor: (1) he has a protected liberty

ORDER GRANTING HABEAS PETITION - 3

interest in not remaining in custody at NWIPC; (2) the absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation; and (3) the governmental interest in Petitioner's re-detention without following its own regulations or providing a hearing is minimal or non-existent. *See id.* at *3; *P.T. v. Hermosillo*, No. C25-2249-KKE, 2025 WL 3294988, at *2–4 (W.D. Wash. Nov. 26, 2025); *see also Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *4 (W.D. Wash. Jan. 15, 2026) (noting any factual disputes related to the justification for a petitioner's re-detention should be resolved at a pre-deprivation hearing, not after-the-fact during habeas proceedings).

When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). Under 8 U.S.C. § 1231(a)(2)(A), a noncitizen "shall" be detained during the removal period. After that 90-day removal period concludes—in what is referred to as the "post-removal period"— the government's detention authority shifts to Section 1231(a)(6). See 8 U.S.C. § 1231(a)(6); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). "[T]he due process analysis attaches in the post-removal period[.]" *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004); *see also Aguilar Garcia v. Kaiser*, No. 3:25-CV-05070-JSC, 2025 WL 2998169, at *5 (N.D. Cal. Oct. 24, 2025) (finding that Petitioner did not establish a likelihood of success on the merits of his habeas petition because he was "within the 90-day mandatory detention window of Section 1231(a)(2) and due process does not require a bond hearing at least until he is in the post-removal period").

Here, the Court rejects Respondents' suggestion that neither the regulations governing the revocation of an OSUP nor the Due Process Clause applies because Section 1231(a)(5) provides that a noncitizen with a reinstated final order of removal shall be removed at any time after reentry of the order. Dkt. 5, at 7–8. First, all evidence suggests the existence of an OSUP or some

ORDER GRANTING HABEAS PETITION - 4

form of supervised release. There is no dispute Petitioner checked in semi-annually or annually for nearly 7 years, during which time the government knew he was subject to a reinstated final order of removal and chose not to detain or remove him.[2] Petitioner was only detained upon reporting for a regularly scheduled check-in. Second, the government can cite no authority to support the proposition that Section 1231(a)(5) immunizes the government from following its own regulations or the Constitution when revoking the supervision of noncitizens subject to a reinstated final order of removal. Respondents offer no evidence that contradicts Petitioner's contention Petitioner has been in the post-removal period since 2019 and was on an OSUP when detained nearly 7 years later in January 2026.

The regulations governing revocation of an OSUP contemplate revocation in only two circumstances: (1) where the noncitizen violates his conditions of release and (2) where "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). Alternatively, "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [USCIS] custody [a noncitizen] previously approved for release under the procedures in this section," and "[a] district director may also revoke release of [a non-citizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Discretionary revocation is

---

[2] Petitioner submitted a Department of Homeland Security ("DHS") call-in letter dated April 9, 2019, in which Petitioner was directed to report to the Tukwila office on April 30, 2019. Dkt. 10-5, at 1. On the back of this letter are a series of dates, in one column setting forth what appears to be a current check-in date, and in another column setting forth the "NEXT REPORT DATE." *Id.* at 2. The next reporting date column shows semi-annual to annual check-in dates beginning on June 11, 2019, and extending to January 8, 2025.

ORDER GRANTING HABEAS PETITION - 5

permitted when, in the opinion of the revoking official:

> (i) The purposes of release have been served;

> (ii) The [noncitizen] violates any condition of release;

> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or

> (iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

*Id.* Upon revocation, the noncitizen "will be notified of the reasons for revocation of his or her release," 8 C.F.R. § 241.13(i)(3), and USCIS "will conduct an initial informal interview promptly after his or her return to [USCIS] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification," including by "submit[ting] any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." *Id.*

"The procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026); *see also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (8 C.F.R. § 241.4 "plainly provide[s] due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, requiring that only certain designated officials make custody determinations; mandating that a noncitizen receive a copy of any decision to release or detain that individual; establishing criteria and factors applicable to detention, release, and revocation determinations; and requiring certain

ORDER GRANTING HABEAS PETITION - 6

procedural safeguards upon revocation to allow a noncitizen to have an opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews"). "Therefore, ICE violates a noncitizen's due process rights when the agency re-detains [hi]m and fails to comply with these revocation procedures." *Hall*, 2026 WL 18583, at *4.

Respondents provide no supportive documentation or explanation for why Petitioner was not provided the process the regulations require. According to Petitioner's uncontradicted statement, government officers told him that he was being detained for having violated his OSUP by departing the United States and returning. Dkt. 1, at 4–5 ¶¶ 21–23. The government states Petitioner was detained entirely because in 2026 it "discovered" Petitioner had a reinstated final order of removal from 2019, despite detaining him upon a routine check-in and with no indication whatsoever that Petitioner had ever failed to comply with the conditions of release. Dkt. 7-4, at 3–4. There is no indication Petitioner was provided notice, an informal interview, or an opportunity to respond to the reasons for revocation stated in the notification. 8 C.F.R. § 241.13(i)(3). There is no indication a revocation custody review "include[d] an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant[ed] revocation and further denial of release." *Id.* The Court rejects "notice" provided in the 2019 reinstituted final order of removal constituted reasonable notice that, after years of compliance with check-in requirements, Petitioner would be detained in 2026. The Court also rejects the government's argument that notes on the I-213 form showing Petitioner was offered food and water, expressed a fear of returning to Mexico, and discussed his familial status meant that Petitioner was offered an informal interview, an opportunity to respond to the reasons for revocation, and a meaningful evaluation of contested facts that constituted sufficient compliance with regulatory requirements and procedural due process. *See* Dkt. 7-4, at 4.

ORDER GRANTING HABEAS PETITION - 7

The Court finds Petitioner's procedural due process rights were violated by the government's failure to follow its own applicable regulations.

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is **GRANTED**.

1. Respondents shall release Petitioner from custody **no later than 5 p.m. on April 7, 2026**, subject to the terms of his most recent OSUP or on conditions otherwise compliant with 8 U.S.C. § 1231(a)(3). *See* 8 U.S.C. § 1231(a)(6) ("[I]f released, [a noncitizen ordered removed] shall be subject to the terms of supervision in paragraph (3)).")

2. Respondents shall submit to the Court, within twenty-four (24) hours of Petitioner's release from detention, a certification confirming Petitioner has been released from custody and informing the Court of the date and time of his release.

3. Respondents may not re-detain Petitioner without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231. No re-detention proceedings may take place while the Ninth Circuit's current stay of Petitioner's removal remains in-place unless detention is statutorily mandatory (which it is not currently). *See Chicoze-Ezechi v. Noem*, 2026 WL 265733, at *2 (W.D. Wash. Feb. 2, 2026) ("Petitioner would be subject to mandatory detention if he committed certain crimes.").

4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

DATED this 6th day of April, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION - 8